913 F.2d 56
 17 Fed.R.Serv.3d 1055
 Raymond WAGSTAFF-EL, Plaintiff-Appellant,
v.
CARLTON PRESS COMPANY, et al., John Doe, Robert G. Martin,
individually, and in his official capacity as Executive Vice
President of Carlton Press, Inc., Carlton Press, in its
official capacity as Publishing Co., Defendants-Appellees.
 No. 67, Docket 90-7270.
 United States Court of Appeals,
Second Circuit.
 Submitted Sept. 12, 1990.
Decided Sept. 14, 1990.
 
 Raymond Wagstaff-EL, pro se and in forma pauperis.
 Jesse Alan Epstein, Weisman, Celler, Spett & Modlin, New York, New York, for defendants-appellees.
 Before KAUFMAN, WINTER and MINER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Raymond Wagstaff-EL appeals from Judge Stanton's order granting summary judgment in favor of defendants-appellees after he had vacated a default judgment against them. We affirm.
 
 
 2
 In April 1985, while incarcerated at Ray Brook, New York, Wagstaff-EL submitted the manuscript of a book entitled "The Life, Works, Teachings of Jesus in India, Africa, Europe and in the Land of Egypt" to Carlton Press ("Carlton"), a subsidy publisher, more commonly known as a vanity press. In May 1985, Carlton wrote to Wagstaff-EL offering to publish his book and sending a contract for his review. Under the contract, Wagstaff-EL would have been required to pay $6,790 for manufacturing and publishing services provided by Carlton, in return for which he would receive 100 free copies of his book, promotional and marketing assistance, and specified royalties.
 
 
 3
 Wagstaff-EL never signed the contract or sent the subsidy, and, on July 3, 1985, Carlton mailed the manuscript to Wagstaff-EL's Ray Brook, New York address. Months later, Wagstaff-EL sent several letters to Carlton stating that he had not received the manuscript and requesting that it be returned to a new address in Lewisburg, Pennsylvania.[1] Carlton explained by letter that it already had returned the manuscript to his last known address, but, on March 5, 1987, Wagstaff-EL filed the present action.
 
 
 4
 Carlton was served by mail and was aware of the lawsuit. Indeed, Robert Martin, the company's executive vice president, wrote a letter to Judge Stanton on March 19, 1987, stating that Carlton did not have the manuscript. Nevertheless, Carlton filed no answer to Wagstaff-EL's complaint, prompting the district court clerk to enter a certificate of default in Wagstaff-EL's favor. Shortly thereafter, on July 31, 1987, Judge Stanton signed a default judgment, apparently prepared by Wagstaff-EL, in the "total amount of $50,000.00 which include[d] interest of 6% from 1985 amounting to $3,000 plus costs and disbursement of this action in the amount of $20.00." No hearing was held to inquire into the enumerated damages, which included many nonsensical items. For instance, Wagstaff-EL claimed $6,790 as the "price of contract"--even though no contract was ever signed and, if it had been signed, Wagstaff-EL would have owed Carlton $6,790, not vice versa. The damages included $24,325 for 3,500 books "proposed to be published at $6.95" even though under the proposed contract the author would have received only $2.78 per copy. Finally, they included $17,000 in punitive damages, a number pulled from the sky.
 
 
 5
 Eight months later, on March 25, 1988, Wagstaff-EL obtained a writ of execution on his judgment. Thereafter, Carlton, finally represented by counsel, moved to vacate the default judgment and to permit Carlton to file an answer and defend the action. Judge Stanton granted the motion to vacate the default judgment, whereupon Carlton answered the complaint and moved for summary judgment, which was granted.
 
 
 6
 On appeal, Wagstaff-EL argues that the district court erred in vacating the default judgment and that summary judgment should not have been granted. We disagree.
 
 
 7
 Fed.R.Civ.P. 60(b)(1) states that a court may vacate a default judgment for "reasons [of] mistake, inadvertence, surprise, or excusable neglect...." We have noted, however, "courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied. These criteria ... include (1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the nondefaulting party if relief is granted." Davis v. Musler, 713 F.2d 907, 915 (2d Cir.1983).
 
 
 8
 The district court found that Carlton's conduct upon receiving the complaint and summons "was so nonchalant as to be willful." However, it vacated the judgment because Carlton had a meritorious defense and Wagstaff-EL would not be prejudiced if the default judgment was vacated. We believe that vacating the judgment was not an abuse of discretion.
 
 
 9
 We believe that Carlton's default may be justly characterized as willful and should be excused only for a compelling reason. Such a reason exists, however, in the fact that Wagstaff-EL's action and the resultant judgment have no valid basis whatsoever. Were they based on grounds of even minimally colorable validity, vacating the default judgment might have been an abuse of discretion. However, as stated, supra, the calculation of damages was preposterous. As to liability, Wagstaff-EL's underlying claims were either facially invalid or utterly unsupported. The quantum meruit or implied contract claim misapprehended the relation between Carlton and Wagstaff-EL. Carlton expected to receive payment for its efforts, with Wagstaff-EL receiving residual compensation at best. Likewise, the claim for wrongful conversion is totally unsupported by evidence refuting the affidavit and exhibits showing that Wagstaff-EL's manuscript was returned to his last known address on July 3, 1985. Finally, the dismissal of Wagstaff-EL's copyright claims was proper on numerous grounds, including failure to show a registered copyright or present evidence of an infringing use. Allowing the default judgment to stand would, therefore, have constituted a serious miscarriage of justice. Accordingly, the order granting summary judgment in favor of defendants-appellees is affirmed.
 
 
 
 [1]
 Two of these letters appear in the record; they are dated November 10, 1986 and December 28, 1986, nearly a year and a half after the manuscript had been sent to Wagstaff-EL's last known address